UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOMPHOTH BOBY SIRATSAMY,<br><br>Plaintiff,<br><br>v.<br><br>SACRAMENTO COUNTY SHERIFF DEPARTMENT, et al.,<br><br>Defendants. | No. 2:21–cv–0678–JAM–KJN PS<br><br>ORDER GRANTING IFP REQUEST AND GRANTING LEAVE TO AMEND<br><br>(ECF Nos. 1-2) |

Plaintiff is representing himself in this action and seeks leave to proceed in forma pauperis ("IFP").[1] (ECF No. 1.) See 28 U.S.C. § 1915. Plaintiff's affidavit in support of his IFP request makes the required financial showing. Accordingly, the court grants plaintiff's IFP request.

The determination that a plaintiff may proceed IFP does not complete the required inquiry, however. Pursuant to the IFP statute, federal courts must screen IFP complaints and dismiss the case if the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or seeks monetary relief against an immune defendant. 28 U.S.C. § 1915(e)(2)(B); Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint

---
[1] This action proceeds before the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c)(21).

1

that fails to state a claim."). Further, federal courts have an independent duty to ensure that federal subject-matter jurisdiction exists. See United Investors Life Ins. Co. v. Waddell & Reed Inc., 360 F.3d 960, 967 (9th Cir. 2004).

**Legal Standards**

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327.

To avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, relief cannot be granted for a claim that lacks facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When considering whether a complaint states a claim upon which relief can be granted, the court must accept the well-pled factual allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the complaint in the light most favorable to the plaintiff, see Papasan v. Allain, 478 U.S. 265, 283 (1986).

In addition, the court must dismiss a case if, at any time, it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). A federal district court generally has jurisdiction over a civil action when (1) a federal question is presented in an action "arising under the Constitution, laws, or treaties of the United States" or (2) there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332(a).

Pleadings by self-represented litigants are liberally construed. See Haines v. Kerner, 404

U.S. 519, 520-21 (1972); Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). Unless it is clear that no amendment can cure the defects of a complaint, a self-represented plaintiff proceeding IFP is ordinarily entitled to notice and an opportunity to amend before dismissal. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds by statute as stated in Lopez, 203 F.3d 1122; Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir. 1984). Nevertheless, leave to amend need not be granted when further amendment would be futile. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

**The Complaint**

Plaintiff filed this civil form complaint against the Sacramento County Sheriff's Department and the owner, the manager, and an assistant of the apartment complex where he lives. (ECF No. 1 at 2-3.) The complaint is very difficult to understand. As best the court can tell, this suit relates to plaintiff's altercations with other tenants which at some point led to plaintiff's arrest and temporary detention. As the basis for the court's jurisdiction, plaintiff checked the box for "Federal question," but in the space for listing the federal laws violated, plaintiff provides a disjointed narrative of events citing only his "his 3rd and 4th amendment [right] to bear arms and the right to protect." (Id. at 3-4.) Plaintiff references an "invasion of privacy" and claims that he "experienced multiple handouts of tort in the omni domain of the ego in mal practice" by "Sam," whom he identifies as the "Fiduciary/Manager" of the apartment complex. (Id.) Plaintiff asserts that "local Sherriffs [sic]" were involved and the "associated deputies burglarized [his] apartment and materialized a[] deadly weapon by stealing [his] property out of [his] apartment"; he was later "released from county jail with mal-nutrition." (Id. at 4.)

As his Statement of Claim, plaintiff pleads some sort of "malice act" by Sam after plaintiff was assaulted by another tenant's son. (Id. at 5.) He also describes some sort of "boycott" and conspiracy against him by the other tenants who eventually "disposed the aggrivate through local deputy services [sic]." (Id.) The section for Relief adds that plaintiff was "harassed by lower unit neighbor, correlating with the manager, Sam, concluding how [his] private information was given away to the lower unit tenant." (Id. at 6.) Plaintiff refers throughout the

3

complaint to a "plot of omni domain" without explaining the phrase.  (Id. at 4-6.)  Plaintiff claims that all this caused him lost study time during his midterms, "Defamintation damages," and emotional distress.  (Id. at 6.)

**Analysis**

There are several problems with this complaint which plaintiff must fix if he wishes to move forward with this suit.

  1. *Unintelligible Statement of the Claim*

First, the complaint does not clearly describe the events plaintiff is complaining about.  Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain statement" of (1) the grounds for the court's jurisdiction and (2) the claim showing that plaintiff is entitled to relief.  Fed. R. Civ. P. 8(a); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (purpose of these pleading requirements is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (cleaned up)).  The current allegations do not clearly state what happened to plaintiff, when it happened, or who did what.  For example, although the complaint lists Bruce Mentzer and Niki Con as two of the four defendants, plaintiff does not include any allegations about those individuals or state how they harmed him.  (See ECF No. 1 at 2-3.)  If plaintiff chooses to amend the complaint, he must specify who did what, when the events occurred, and how he was harmed by the alleged conduct.  Plaintiff is welcome to use additional pages to explain these details, beyond the space provided in the complaint form; however, the statement of the claim should be kept relatively "short."

  2. *No Viable Causes of Action*

Second, the complaint currently does not identify any viable causes of action over which this court possesses subject-matter jurisdiction.

    a.  No Subject-Matter Jurisdiction over State Law Claims Against In-State Defendants

Plaintiff refers generally to various sorts of tort claims—such as defamation, assault, and fraud—which he seems to assert against the building manager "Sam" and other building residents (who are not named as defendants).  But these sorts of personal injury claims arise under state

law, not federal law, so this court would only have subject-matter jurisdiction over those claims in two specific circumstances. First, the court could have subject-matter jurisdiction over the state law claims if the parties were completely "diverse" from each other and the amount in controversy exceeded $75,000. See 28 U.S.C. § 1332(a)(1). Complete diversity requires that each plaintiff must be a citizen of a different state from the defendant(s). See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005). However, here, all three of the individual defendants reside in California, like plaintiff. (ECF No. 1 at 2-3 (listing California addresses for all parties).) Alternatively, the court could exercise subject-matter jurisdiction over state law claims if they were "so related to" federal claims in the action that they "form part of the same case or controversy." See 28 U.S.C. § 1367 (supplemental jurisdiction). Moreover, at this time there are no valid federal claims asserted, so the court cannot exercise supplemental jurisdiction.

        b.   No Viable Federal Claims

The only provisions of federal law plaintiff mentions in the complaint are the constitutional right to bear arms (found in the Second Amendment, not the Third Amendment) and a supposed constitutional "right to protect." (ECF No. 1 at 4.) But the Constitution, itself, does not provide a private right of action to litigants. Instead, plaintiffs complaining of constitutional violations must assert a cause of action under 42 U.S.C. § 1983 to bring their constitutional claims. Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979) (explaining that § 1983 was enacted to create a private cause of action for violations of the U.S. Constitution); Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992) ("Plaintiff has no cause of action directly under the United States Constitution.").

42 U.S.C. § 1983 provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The term "person[s]" in § 1983 encompasses state and local officials sued in their individual capacities, private individuals, and entities which act under the color of state law—including local governmental entities. See Sutton v. Providence St. Joseph Medical Center, 192 F.3d 826, 835

(9th Cir. 1999) (party charged with constitutional deprivation must be a governmental actor because "§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong").

Accordingly, plaintiff cannot assert a § 1983 claim against the private individual defendants, unless he can plausibly allege they were acting under color of state law. However, it appears that plaintiff may be trying to assert various constitutional deprivations against the Sacramento County Sheriff's Department. The complaint suggests at least three attempts at § 1983 claims: (1) under the Second Amendment (right to bear arms), (2) under the Fourth Amendment (unreasonable search and seizure), and (3) under the Fourth or Fourteenth Amendments (conditions of confinement). In order to sufficiently assert such claims, however, plaintiff will need to amend the complaint.

### i. Claims against the County

The only governmental actor plaintiff names in the complaint is the Sacramento County Sheriff's Department. If plaintiff wishes to proceed with the above potential claims at the entity level—rather than asserting them against the individual officers involved—he will need to meet the legal standard for stating a constitutional claim against a municipal entity. Although there is split authority on this subject, the undersigned continues to hold that a California sheriff's department or police department is not a "person" under § 1983 and therefore not a proper defendant for § 1983 claims. See Gunn v. Stanton Corr. Facility, No. 2: 21-CV-0456-KJN-P, 2021 WL 1402141, at *2 (E.D. Cal. Apr. 14, 2021) (citing Cantu v. Kings Cty., No. 1:20-CV-00538-NONE-SAB, 2021 WL 411111, at *1-2 (E.D. Cal. Feb. 5, 2021) (discussing split authority in this district)). This is because the Sheriff's Department is a subdivision of a local government entity, in this case Sacramento County. Nelson v. County of Sacramento, 926 F. Supp. 2d 1159, 1170 (E.D. Cal. Feb. 26, 2013) ("Under § 1983, 'persons' includes municipalities. It does not include municipal departments."). Thus, plaintiff would need to sue Sacramento County, not the Sheriff's Department. If plaintiff files an amended complaint naming Sacramento County as a defendant, the legal standard for stating a claim against a municipal entity is as follows.

Liability under 42 U.S.C. § 1983 may be imposed on local governments when their

official policies or customs cause their employees to violate an individual's constitutional rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978).  A plaintiff may establish Monell liability by showing that a city or county employee committed an alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992) (per curiam) (citation omitted).  A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008) (citation omitted).  A "custom" is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (citation omitted).  In order to hold the municipality liable, the policy, practice, or custom must be the "moving force behind a violation of constitutional rights." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011).  Further, the policy or custom must "reflect[] deliberate indifference to the constitutional rights of [the municipality's] inhabitants." City of Canton v. Harris, 489 U.S. 378, 392 (1989); Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1073 (9th Cir. 2016).

Therefore, for any constitutional violation plaintiff might wish to assert against Sacramento County via § 1983, he would have to allege facts showing "that a [County] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the [County]." Gillette, 979 F.2d at 1346.  In very restricted circumstances, the ***lack*** of a county policy to limit constitutional violations—for instance a failure to train county employees or officers—can also give rise to Monell liability.  See City of Canton, 489 U.S. at 390; Oviatt v. Pearce, 954 F.2d 1470, 1477 (9th Cir. 1992) ("[T]he decision not to take any action to alleviate the problem of detecting missed arraignments constitutes a policy for purposes of § 1983 municipal liability.").

The current complaint lacks sufficient facts to raise a Monell claim of any sort against the

County based on any constitutional violation. Plaintiff merely alleges that the Sherriff's Department—as a whole—invaded his privacy, "burglarized" his apartment during an apparent search and seizure, and provided insufficient nutrition while he was in jail. (ECF No. 1 at 4.) Plaintiff does not allege which specific County officers or employees violated his constitutional rights, or how they did so; nor does it connect their conduct to a County policy, practice, or custom.

Should plaintiff wish to pursue constitutional claims via § 1983 against the County or County employees or government actors, the court briefly addresses the problems with the potential constitutional claims suggested in the current complaint—so that plaintiff can address them in any amended complaint, if he chooses.

*ii. Second Amendment Claim*

The Second Amendment protects an individual's right to keep and bear arms for the purpose of self-defense. McDonald v. City of Chicago, 561 U.S. 742, 749-50 (2010). Plaintiff seems to assert that Sheriff's deputies violated his Second Amendment right by seizing a "deadly weapon" during a search of his apartment. (ECF No. 1 at 4.) "The mere occurrence of a . . . seizure . . . , however, is not enough to establish a Second Amendment violation." Partin v. Gevatoski, No. 6:19-CV-1948-AA, 2020 WL 4587386, at *4 (D. Or. Aug. 10, 2020). Thus, plaintiff would need to allege facts—beyond whatever seizure may have occurred—that implicate his Second Amendment rights.

*iii. Fourth Amendment Seizure Claim*

The Fourth Amendment protects individuals against "unreasonable searches and seizures" by the government. Terry v. Ohio, 392 U.S. 1, 8-9 (1968). Plaintiff appears to assert that Sheriff's deputies unlawfully seized property from his apartment. (ECF No. 1 at 4 (alleging that deputies "burglarized my apartment and materialized a[] deadly weapon by stealing my property out of my apartment").) "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." Florida v. Jimeno, 500 U.S. 248, 250 (1991); see Birchfield v. North Dakota, 136 S. Ct. 2160, 2186 (2016).

Removing personal property is certainly a seizure within the meaning of the Fourth

Amendment. See, e.g., Miranda v. City of Cornelius, 429 F.3d 858, 862 (9th Cir. 2005). And "a "seizure carried out on a suspect's premises *without a warrant* is per se unreasonable, unless . . . it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'" United States v. Device, Labeled "Theramatic", 641 F.2d 1289, 1292 (9th Cir. 1981) (emphasis added) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 474-75 (1971)). The complaint currently does not contain enough facts to plausibly allege that a seizure occurred, or that such seizure was unreasonable. For instance, there is no allegation whether the deputies had a warrant to search plaintiff's apartment or seize any property therein, what property the deputies took, whether plaintiff's weapon (or other property) was later returned to him, or other surrounding circumstances relevant to assessing the nature of the alleged seizure.

*iv. Conditions of Confinement Claim*

The complaint currently contains only one sentence suggesting that plaintiff might be raising a conditions of confinement claim. Plaintiff simply states—without describing how he got to jail in the first place—that at some unstated time after Sheriff's deputies came to his apartment he was "released from county jail with mal-nutrition, administered at Keister Permanente with 3000 cc of saline." (ECF No. 1 at 4.)

Based on this allegation, the court infers that plaintiff might be attempting to raise a challenge to his conditions of confinement under either the Fourth Amendment or the Fourteenth Amendment Due Process Clause.[2] It is unclear which Amendment would form the basis of the claim because the complaint does not indicate plaintiff's precise custodial status while in jail. The Fourth Amendment "sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest." Pierce v. Multnomah Cty., 76 F.3d 1032, 1043 (9th Cir. 1996). Thereafter, the Due Process Clause of the Fourteenth Amendment

---

[2] Based on plaintiff's reference to being released from County "jail," the court infers that plaintiff was not serving a post-conviction prison term which would place his malnourishment claim under the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 599 n.16 (1979) (pretrial detainees are protected by Due Process Clause, whereas sentenced inmates are protected by the Eighth Amendment's Cruel and Unusual Punishment Clause).

9

protects the rights of pretrial detainees. Bell v. Wolfish, 441 U.S. 520, 535 (1979).

Plaintiff does not seem to allege a traditional excessive force claim for his treatment while in custody, but the Fourth Amendment's "objective reasonableness standards" also "apply to evaluate the *condition* of such custody." Pierce, 76 F.3d at 1043. Under the Fourth Amendment, the court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake," asking whether the defendants' actions, judged from the perspective of a reasonable officer, are "objectively reasonable in light of the facts and circumstances confronting them, without regard to [the officer's] underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 396-97 (1989) (internal quotation marks omitted).

If plaintiff's alleged malnourishment occurred after an arraignment or probable cause hearing, however, plaintiff's claim would arise under the Fourteenth Amendment Due Process Clause. Bell, 441 U.S. at 535. Under the Fourteenth Amendment, "[p]retrial detainees are entitled to adequate food, clothing, shelter, sanitation, medical care, and personal safety." Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996) (cleaned up). The Constitution "requires only that prisoners receive food that is adequate to maintain health." Mendiola-Martinez v. Arpaio, 836 F.3d 1239, 1259 (9th Cir. 2016) (quoting Foster v. Runnels, 554 F.3d 807, 813 n.2 (9th Cir. 2009). The Ninth Circuit evaluates the sufficiency of a malnourishment claim by considering whether the allegations lead to a "permissible inference that the [plaintiff]'s nutrition was inadequate and could not sustain him." Mendiola-Martinez, 836 F.3d at 1259.

To state a claim of unconstitutional conditions of confinement against an individual defendant, a pretrial detainee must allege facts that show: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the

defendant caused the plaintiff's injuries." Gordon v. County of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018). These elements constitute an "objective deliberate indifference standard," wherein the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." Id. at 1124-25

Whether viewed under the Fourth Amendment or the Fourteenth Amendment, plaintiff's current complaint does not allege sufficient facts to show that the conditions of his detention in the County jail were objectively unreasonable under the circumstances, or that his jailers were objectively deliberately indifferent to the adequacy of his food. Plaintiff's conclusory statement that he was released from jail "with mal-nutrition" is not enough. At a minimum, plaintiff would need to allege facts showing ***how*** he was malnourished, that someone intentionally decided to give him inadequate sustenance, that this decision was objectively unreasonable, and that the decision caused him harm.

### v. Conclusion

Plaintiff is reminded that for any of these (or other) constitutional violations plaintiff might assert against the County in any amended complaint, he must plausibly allege a policy, custom, or practice of such violations to adequately state a § 1983 claim against the County. That requirement would not apply if, instead, plaintiff amended his complaint to name as defendants specific officers or deputies of the Sheriff's Department, in their individual capacities.

**Leave to Amend**

In light of plaintiff's pro se status, and because it is at least conceivable that plaintiff could allege additional facts to potentially state a claim for relief against Sacramento County, the court grants plaintiff an opportunity to amend the complaint. See Lopez, 203 F.3d at 1130 ("leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect") (cleaned up).

To summarize, plaintiff cannot proceed with any state law claims against the private individuals currently named (because they, like plaintiff, are citizens of California), unless the amended complaint shows that such claims share a common set of facts with a valid federal claim. The court grants plaintiff this opportunity to amend the complaint to attempt to state a

11

valid federal claim that meets the standards described above.

Plaintiff is informed that the court cannot refer to a prior complaint or other filing in order to make plaintiff's first amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint, and once the first amended complaint is filed, the original complaint no longer serves any function in the case.

Finally, nothing in this order requires plaintiff to file a first amended complaint. If plaintiff determines that he is unable to amend his complaint in compliance with the court's order, he may alternatively file a notice of voluntary dismissal of his claims without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that

1. Plaintiff's request to proceed in forma pauperis (ECF No. 2) is GRANTED;
2. Within **30 days** of this order, plaintiff shall file either (a) a first amended complaint in accordance with this order, or (b) a notice of voluntary dismissal of the action; and
3. Failure to file either a first amended complaint or a notice of voluntary dismissal by this deadline may result in the imposition of sanctions, including potential dismissal of the action with prejudice pursuant to Federal Rule of Civil Procedure 41(b).

IT IS SO ORDERED.

Dated: May 28, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

AW, sira.0678